UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 25-CR-106-KKC

UNITED STATES OF AMERICA                                                PLAINTIFF

V.                          PLEA AGREEMENT

CHAYANNE NOLASCO-GARCIA                                                 DEFENDANT
   aka Spazz

* * * * *

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 2 of the Indictment charging a violation of 18 U.S.C. § 922(o), possession of a machinegun; Count 3 of the Indictment charging a violation of 21 U.S.C. § 841(a)(1), distribution of a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; and Count 5 of the Indictment charging a violation of 18 U.S.C. §933(a)(1), firearms trafficking. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Counts 1 and 4.

2. The essential elements of Count 2 are:

   (a) The Defendant knowingly possessed a machinegun; and

   (b) the Defendant knew, or was aware of, the essential characteristics of the firearm which made it a machinegun as defined by 18 U.S.C. § 921(a)(24).

   The essential elements of Count 3 are:

   (a) The Defendant knowingly and intentionally distributed a quantity of a mixture or substance containing a controlled substance.

1

(b) The mixture or substance distributed contained a detectable amount of cocaine, a Schedule II controlled substance.

The essential elements of Count 5 are:

(a) The Defendant knowingly transferred or otherwise disposed of firearms to another person.

(b) The transferring or disposition of the firearms was in or otherwise affecting interstate commerce.

(c) The Defendant knew or had reasonable cause to believe that the use, carrying, or possession of the firearms by the other person or recipient would constitute a felony.

3. As to Counts 2, 3, and 5, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

(a) On April 9, 2025, in Fayette County, Kentucky, in the Eastern District of Kentucky, the Defendant sold an ounce of cocaine to a confidential informant and an ATF undercover agent for $990.00. During the transaction, the confidential informant and the Defendant discussed the Defendant selling a "button," which is slang for a Glock conversion device. The Defendant told the confidential informant that he did not have one on him, but that "his people would have to bring it from the crib." A Glock conversion device is a part or combination of parts that is designed and intended for use in converting a weapon into a machinegun and is itself considered a machinegun. A Glock conversion device will allow a weapon to shoot automatically without manual reloading by a single function of the trigger.

(b) On April 16, 2025, another ATF Special Agent acting in an undercover capacity, met with the Defendant in Fayette County, a few meters from the Defendant's house, to purchase a machinegun. The Defendant was on bond from criminal charges in Fayette County District Court, and wore an electronic monitoring device that would not allow him to travel 50 meters from his home without court authorization. The Defendant sold the undercover agent an Anderson Manufacturing AR pistol; Model AM-15, Caliber: Multi, serial number 23113328, that had been modified to be a machine gun. The Defendant told the undercover

2

agent about the pin that was used to modify the firearm to make it a machine gun and showed the undercover agent a video of the gun firing at full auto. The Defendant was paid $1600.00 for the machinegun. The Defendant admits that he knew possession of a machinegun was illegal, and that he had reasonable cause to believe that the possession of the machinegun by the person he sold it to would be a crime punishable by more than one year under state or federal law.

(c) After the transaction for the machinegun, the Defendant offered to sell the undercover agent an Uzi. The undercover agent indicated that he would take whatever he could sell to "Eastern Kentucky coal boys." The Defendant asked if they liked Glocks, and the undercover agent said yes. The undercover agent asked about "buttons," and Defendant said he had "buttons."

(d) On May 9, 2025, the same ATF undercover agent who purchased the machinegun from the Defendant on April 16th and the confidential informant from the August 9, 2025, cocaine deal purchased a fully loaded Glock GMBH, Model 19GEN5, 9 mm caliber pistol, serial number CCKS454, from the Defendant. Again, the deal took place a few meters from the Defendant's house. The Defendant was using encrypted social media applications to arrange the deals he made with the informant and the undercover agent to avoid detection by law enforcement. The Defendant was supposed to sell an ounce of cocaine in addition to the Glock. The confidential informant told the Defendant when he set up the deal that the undercover agent messed with "it" meaning that he used cocaine every now and then, but that he mainly sold cocaine. When the Defendant arrived, he indicated that he only had $50.00 worth of cocaine. The offer of cocaine was not taken, but the Defendant gave the confidential informant a marijuana cigarette and sold the undercover agent the Glock for $850.00. The Defendant admits that, given the circumstances of the deal for drugs and the firearm and the information that he was told about the person he sold the firearm to, he had reasonable cause to believe that the possession and carrying of the Glock by that person would be a crime punishable by more than one year under state or federal law.

(e) On May 22, 2025, the Defendant met the undercover agent and the confidential informant outside of the Defendant's house. The undercover agent purchased a loaded Masterpiece Arms, Model Defender, 9 mm caliber pistol, serial number FX47280 for $800.00, and the confidential informant purchased a gram of cocaine from the Defendant for $50.00. The Defendant admits that, given the

3

circumstances of the deal for the drugs and the firearm and what he knew about the person he sold the firearm to, he had reasonable cause to believe that the possession and carrying of the Masterpiece Arms by that person would be a crime punishable by more than one year under state or federal law.

(f) On June 12, 2025, the undercover agent met with the Defendant by himself outside of the Defendant's house, and purchased a machinegun, specifically a Glock Conversion device that would allow a Glock-type firearm to switch between automatic and semiautomatic operation, for $750.00.

(g) All the firearms sold by the Defendant travelled in interstate commerce prior to being possessed by the Defendant. Lab testing of the suspected controlled substances sold by the Defendant were confirmed to be cocaine, a Schedule II controlled substance. A firearms expert examined the AR pistol and Glock conversion device and confirmed that they were machineguns as defined by federal law.

4. The statutory punishment for Count 2 is imprisonment for not more than 10 years, a fine of not more than $250,000.00, and a term of supervised release of not more than 3 years. The statutory punishment for Count 3 is imprisonment for not more than 20 years, a fine of not more than $1,000,000.00, and a term of supervised release of at least 3 years. The statutory punishment for Count 5 is imprisonment for not more than 15 years, a fine of not more than $250,000.00, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100, per count, applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of sentencing.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court:

4

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2024, manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes information in Paragraph 3 and the discovery.

(c) Pursuant to U.S.S.G. § 2K2.1(a)(5), the base offense level for Count 2 is 18.

(d) Pursuant to U.S.S.G. § 2K2.1(b)(1), increase the offense level for Count 2 by 2 levels for the offense involving 3 firearms.

(e) Pursuant to U.S.S.G. § 2K2.1(b)(5)(B)(i)(II), increase the offense level for Count 2 by 2 levels for the Defendant selling a firearm (AR pistol) with reason to believe that the person receiving it would use or dispose of it unlawfully.

(f) Pursuant to U.S.S.G. § 2K2.1(b)(6)(B), increase the offense level for Count 2 by 4 levels for the Defendant possessing the Masterpiece Arms firearm in connection with another felony offense. The Defendant reserves the right to contest this enhancement.

(g) Pursuant to U.S.S.G. § 2K2.1(a)(4), the base offense level for Count 5 is 20.

(h) Pursuant to U.S.S.G. § 2K2.1(b)(1), increase the base offense level for Count 5 by 2 levels for the offense involving 3 firearms.

(i) Pursuant to U.S.S.G. § 2K2.1(b)(5)(B)(i)(II), increase the base offense level for Count 5 by 2 levels for the Defendant selling a firearm (AR pistol) with reason to believe that the person receiving it would use or dispose of it unlawfully.

(j) Pursuant to U.S.S.G. § 2K2.1(b)(6)(B), increase the offense level for Count 5 by 4 levels for the Defendant possessing the Masterpiece Arms firearm in connection with another felony offense. The Defendant reserves the right to contest this enhancement.

(k) Pursuant to U.S.S.G. § 2D1.1, the base offense level for Count 3 is 12.

(l) Pursuant to U.S.S.G. § 2D1.1(b)(1), increase the base offense level for Count 3 by 2 levels because a firearm was possessed.

(m) Pursuant to U.S.S.G. § 3D.1.2, the offenses will group.

(n) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States

will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

8. The Defendant waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant consents to the imposition of a forfeiture money judgment in the amount of $3,250, which represents the amount of proceeds that the Defendant obtained as a result of the offenses to which he is pleading guilty. The Defendant also acknowledges and consents to the administrative forfeiture of the following assets seized from his residence on or about August 28, 2025: $32,116 in U.S. currency; Glock Inc. 42 pistol, CAL: 380, SN: ABGR996; and assorted ammunition. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and criminal violations. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2. If the Defendant fails to pay in full the forfeiture money judgment, he consents to the forfeiture of any other property of his up to the amount of the forfeiture money judgment, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and

knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

10. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

11. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the

United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

12. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or

objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

13. The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status because he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the Defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

14. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

15. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

16. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

PAUL C. McCAFFREY
~~ACTING~~ U.S. ATTORNEY
FIRST ASSISTANT

Date: 12/19/25   By: *Emily K. Greenfield*
Emily K. Greenfield
Assistant United States Attorney

Date: 12/16/2025   *Chayanne Nolasco*
Chayanne Nolasco-Garcia
Defendant

Date: 12/16/2025   *Nick Nash*
Nick Nash
Attorney for Defendant